(C. D. 1902)

DODGE & OLCOTT, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 31, 1957)

*John D. Rode* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: As originally enacted, the Tariff Act of 1930, in paragraph 60 thereof, provided for duty at the rate of 45 per centum ad valorem on a series of specifically named perfume materials, when not mixed and not compounded and not specially provided for, to wit:

> * * * anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, terpineol,

which series of named materials was followed by a general designation in the following language:

> * * * and all natural or synthetic odoriferous or aromatic chemicals.

By the Presidential proclamation relating to the General Agreement on Tariffs and Trade, reported in T. D. 51802, the rates of duty applicable were reduced as follows:

Perfume materials, not containing over 10 per centum of alcohol:

> *     *     *     *     *     *     *
> Geraniol, not mixed and not compounded, and not specially provided for. ... 15% ad val.
> Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:
> > Hydroxycitronellal_____ 15% ad val.
> > Other (except linalyl acetate) _____ 30% ad val.

The merchandise at bar was stipulated by counsel to consist of "safrol, a natural or synthetic odoriferous or aromatic, not mixed and not compounded and not containing more than ten per centum of alcohol." It was assessed with duty at the rate of 45 per centum ad valorem, on the theory that the Presidential proclamation relating to the general agreement did not alter the tariff rate theretofore applicable to safrol. It is claimed to be entitled to duty at the rate of 30 per centum ad valorem on the theory that it is a "Natural or synthetic odoriferous or aromatic chemical[s], not mixed and not compounded, and not specially provided for: Other [than hydroxycitronellal or

linalyl acetate]" and is covered by the provision therefor in the Presidential proclamation.

Citing the well-known rule of statutory construction that first resort must be had to the words actually used in the statute itself, plaintiff points out that the actual language used in the proclamation, to wit:

Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:

\*   \*   \*   \*   \*   \*   \*

Other [than hydroxycitronellal and linalyl acetate]

is a description which, according to the stipulated facts, embraces safrol.

Various other arguments are made pro and con on behalf of the parties, based upon such matters as the effect of the "not specially provided for" clause; of the position of a related provision; of statements made in the Summaries of Tariff Information, 1948, and of subsequent trade agreements, none of which we deem to be so clearly dispositive of the matter as general note No. 1 to schedule XX of the general agreement, 82 Treas. Dec. 316, cited by both parties in the briefs.

At page 314 of the Presidential proclamation relating to the general agreement, as reported in 82 Treas. Dec. 305, the President specifically put into effect the provisions of the general notes in schedule XX of the said agreement by the use of the following language:

Now, THEREFORE, be it known that I, HARRY S. TRUMAN, President of the United States of America, to the end that said trade agreement may be carried out and acting under the authority of the said sections 304 and 350 of the Tariff Act of 1930, as amended, do hereby proclaim, effective on and after January 1, 1948 and subject to the provisions of said protocol and to the exceptions and conditions set forth in subdivisions (a), (b), and (c) below, such modifications of existing duties and other import restrictions of the United States of America and such continuance of existing customs or excise treatment of articles imported into the United States of America as are specified or provided for in parts I, II, and III, annexes D, H, and I, and part I of, *and the general notes* in, schedule XX of said general agreement: \* \* \* [Italics added.]

The said general notes follow schedule XX, representing concessions by the United States, and quite obviously were intended by the negotiators of the agreement and by the President, in his proclamation, to be considered rules of interpretation thereof.

General note No. 1 reads as follows:

1. The provisions of this Schedule shall be construed and given the same effect, and the application of collateral provisions of the customs laws of the United States to the provisions of this Schedule shall be determined, insofar as may be practicable, as if each provision of this Schedule appeared respectively in the statutory provision noted in the column at the left of the respective description of articles.

In *Morganite, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 207, C. A. D. 595, the foregoing language was under consideration by our appellate court, and it was pointed out in the opinion that, if the provisions of the schedule were to be construed as if they actually appeared in the respective provisions of the Tariff Act of 1930, "then it follows that identical phraseology must be given identical meaning."

Translated so as to fit the situation in the case at bar, it, therefore, appears that the description in schedule XX opposite the enumeration of paragraph 60 of the Tariff Act of 1930, which reads—

Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:

must be given the same meaning as the words

* * * natural or synthetic odoriferous or aromatic chemicals, * * * not mixed and not compounded, and not specially provided for,

found in paragraph 60 of the statute, as it existed prior to the issuance of the proclamation.

At that time, those words did not embrace safrol, which was covered by a separate *eo nomine* provision.

It is noted that the leading opinion in the *Morganite, Inc.*, case, *supra*, was not concurred in by a majority of the judges of our appellate court. It does not appear, however, that any disagreement existed in connection with the point with reference to general note No. 1, *supra*. Moreover, in support of the point made, the leading opinion cites *B. Altman & Co.* v. *United States*, 224 U. S. 583, a case involving a somewhat analogous situation.

In that case, the issue involved the correct rate of duty applicable to certain bronze statuary. In paragraph 454 of the Tariff Act of 1897, the rate on statuary was fixed at 20 per centum ad valorem. The paragraph, however, contained a condition reading as follows:

* * * but the term "statuary" as used in this Act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as is the professional production of a statuary or sculptor only.

The reciprocal commercial agreement with France, made under authority of section 3 of the Tariff Act of 1897, authorized the importation of "statuary" at the rate of 15 per centum ad valorem.

The article involved was a bronze bust, cast in a foundry by artisans, and upon which the artist had done little or no retouching. It was, however, within the common or popular meaning of the term "statuary." Classification for duty had been as a manufacture of metal at 45 per centum ad valorem, and it was the contention of the importers that the word "statuary," as found in the reciprocal agreement and proclamation thereof by the President, should receive its popular construction and not be subject to the condition prescribed in para-

graph 454, inasmuch as that condition did not appear either in the reciprocal agreement or the Presidential proclamation thereof.

The Supreme Court, however, was of the opinion that the definition contained in the statute could not be ignored and pointed out that—

* * * the agreement was made under the authority and in accordance with § 3 of the tariff act of 1897, in which very act the term statuary, as used therein, was specifically defined, as we have already stated.

We think the principle of that case is applicable here. General note No. 1, contained in the general agreement and proclaimed by the President, indicates an intention to limit the sense or meaning of the language of the descriptions contained in schedule XX of the agreement and proclamation to the sense or meaning which identical language in the tariff act bore before the agreement and proclamation.

So construed, the provision in paragraph 60 of the tariff act, as amended by the proclamation, does not include safrol. The protest must, therefore, be overruled, and judgment will issue accordingly.