(C.D. 2102)

DODGE & OLCOTT, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 16, 1959)

*John D. Rode* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON and WILSON, Judges

MOLLISON, Judge: This case is a retrial, or, perhaps, more properly, a reargument, of the issues involved in the case of *Dodge & Olcott, Inc.* v. *United States*, decided by this court in favor of the defendant and reported in 39 Cust. Ct. 48, C.D. 1902. That decision was reversed on appeal to the Court of Customs and Patent Appeals in *Same* v. *Same*, 45 C.C.P.A. (Customs) 113, C.A.D. 683; rehearing denied June 24, 1958.

The question presented is whether the rate of duty applicable to safrol, a perfume material provided for at the rate of 45 per centum ad valorem in paragraph 60 of the Tariff Act of 1930, as originally enacted, was reduced by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T.D. 51802, to 30 per centum ad valorem. The higher rate of duty was assessed by the collector on the imported safrol here involved on the theory that the rate of duty applicable to safrol under paragraph 60 was unaffected by the Presidential proclamation cited, while the plaintiff claims that the lower rate is the correct rate under the provisions of the said paragraph, as modified by the cited proclamation.

At the trial of the issue, counsel for the parties stipulated—

\* \* \* that the merchandise the subject of this protest consists in fact of safrol, a natural or synthetic odoriferous or aromatic chemical, not mixed and not compounded, and not containing over 10 per cent of alcohol, and that the merchandise at issue is the same as that passed upon in the case of *Dodge & Olcott* v. *The United States*, C.A.D. 683, and that the record may be admitted in evidence in the instant case.

Paragraph 60 of the Tariff Act of 1930, as originally enacted, provided, among other things, for:

Perfume materials: * * * anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, terpineol, and all natural or synthetic odoriferous or aromatic chemicals, all the foregoing not mixed and not compounded, and not specially provided for * * * [and not containing over 10 per centum of alcohol].

The Presidential proclamation relating to the General Agreement on Tariffs and Trade, T.D. 51802, modified the foregoing in the following language:

| Tariff Act of 1930, para- graph | Description of Products | Rate of Duty |
|---|---|---|
| 60 | Perfume materials, not containing over 10 per centum of alcohol: <br> * * * * * * * <br> Geraniol, not mixed and not compounded, and not specially provided for_____ <br> Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for: <br> Hydroxycitronellal_____ <br> Other (except linalyl acetate)_____ <br> * * * * * * * | <br><br><br>15% ad val. <br><br><br><br>15% ad val. <br>30% ad val. |

In our original decision in the cited case of *Dodge & Olcott, Inc.* v. *United States*, reported in C.D. 1902, we held that the language of general description or class designation in the proclamation, viz,

Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for:

was limited to the same chemicals as were covered by the language in paragraph 60, as originally enacted:

* * * natural or synthetic odoriferous or aromatic chemicals, * * * not mixed and not compounded, and not specially provided for * * *.

We concluded that since safrol was specially provided for by name in the series of chemicals named ahead of the class designation in paragraph 60, as originally enacted, it was not covered by the class designation either as originally enacted or as modified by the Presidential proclamation.

In so doing, we relied strongly upon the general notes contained in the General Agreement on Tariffs and Trade and proclaimed by the President as rules of interpretation thereof. In reversing our decision, the majority of our appellate court said:

* * * The error [of the lower court] was in assuming, apparently, that the words "natural or synthetic odoriferous chemicals * * * not specially provided for" in paragraph 60 *excluded* safrol because it was specifically named in the same clause. We disagree with this construction and believe the quoted words *include* safrol because, after naming it and after saying "and all natural or synthetic odoriferous or aromatic chemicals," paragraph 60 says *"all the*

*foregoing* * * * not specially provided for." (Emphasis ours.) Clearly this last phrase includes the specifically named materials. By the lower court's own reasoning, so do the corresponding words of G.A.T.T. [Italics quoted.]

It was, therefore, the view of the majority of the appellate court that the inclusion in the tariff provision, as originally enacted, of the words "all the foregoing" between the words of the class designation—

* * * all natural or synthetic odoriferous or aromatic chemicals * * *

and—

* * * not mixed and not compounded, and not specially provided for * * *

had the effect of bringing within the scope of the class designation every such chemical, including those named in the series immediately preceding the said class designation.

The only such chemicals excluded from the scope of the class designation, the court indicated, were those which were specially provided for in some other paragraph of the tariff act than paragraph 60.

Examining the language proclaimed by the President in T.D. 51802, *supra*, modifying the rates applicable to certain perfume materials in paragraph 60, the majority of our appellate court concluded that there was exhibited thereby the same intent with respect to the scope of the provision for—

* * * Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for :

i.e., that that provision included, as did the corresponding provision in the tariff act, as originally enacted, all of the named chemicals, except those specially provided for elsewhere in the tariff act, and, presumably, those for which specific provision at other rates was made in the modification proclaimed in T.D. 51802. These latter would be geraniol and hydroxycitronellal, both provided for at a 15 per centum rate, and linalyl acetate, as to which the original tariff rate of 45 per centum was apparently not reduced.

The majority of our appellate court reached these conclusions from a literal reading of the language of paragraph 60 and of the treaty or proclamation which modified paragraph 60. It is to be noted that it was held that such language had a reasonably clear meaning. It thus treated such language as unambiguous, and was obviously following the rule of statutory interpretation that first resort must be had to the words actually used in the statute itself, as to which Crawford, in his work on Statutory Construction, says (§ 164) :

* * * If the meaning of the language of the statute is plain, then according to the rule announced in enumerable [*sic*] cases, there is really no need for construction as the legislative intention is revealed by the apparent meaning, that is, the meaning clearly expressed by the language of the statute.

In order to be certain of the correctness of its view, however, the majority of our appellate court examined such of the legislative history and extraneous aids urged by the respective parties as might lead to a different conclusion, and considered (1) the general notes following schedule XX of the General Agreement on Tariffs and Trade, on which this court relied, (2) the statement in the Summary of Tariff Information (1948), volume 1, part 4, page 155, indicating that the duty on safrol was not reduced by the general agreement, and (3) the effect of the fact that, in the protocol of terms of accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, proclaimed by the President about 7½ years after the proclamation relating to the general agreement, the rate of duty on safrol was fixed at 30 per centum ad valorem.

The information provided by the general notes and by the Presidential proclamation reported in T.D. 53865, the court concluded, was not contrary to its view, and the opinion expressed in the Summary of Tariff Information (1948) was held to be neither necessarily reflective of the intent of the negotiators of the general agreement, nor ratified by legislative adoption in the subsequent act or a treaty made on the basis thereof.

We have set forth the judicial history of the issue presented by this case at some length for the reason that we are here asked to reach a conclusion as to the meaning of the statutory and proclaimed language different from that arrived at by a majority of our appellate court.

Defendant contends that the majority of the appellate court erred in its opinion in the *Dodge & Olcott, Inc.*, case, *supra*, in finding from a literal reading of the language of the proclamation and of the statute which it modified that safrol was included within the scope of the class designation:

Natural or synthetic odoriferous or aromatic chemicals, not mixed and not compounded, and not specially provided for.

Instead, defendant contends, the court should have found that the language and form used in the statute and in the proclamation, when considered together as statutes *in pari materia*, evince a legislative plan, scheme, or arrangement making a distinction between those natural or synthetic odoriferous or aromatic chemicals which were specified by name in paragraph 60 and all other such chemicals, which it contends were intended to be covered by the class designation therefor.

Defendant has offered, as aids to the court in considering the matter, certain additional historical materials which it contends support its contention that the language of the general agreement proclaimed by the President was intended to carry out this legislative scheme and was not intended to effect a reduction in the rate of duty applicable to safrol from 45 per centum to 30 per centum ad valorem.

If it were merely a matter of considering and evaluating materials now, but not previously, offered as extraneous aids to the court in the interpretation or construction of statutory and proclaimed language *of doubtful meaning*, our approach to the task would possibly not be so circumscribed. However, it must be noted again that the majority of our appellate court based its conclusions as to the effect of the statutory and proclaimed language upon a consideration of the language itself, *which it treated as unambiguous and held to be reasonably clear.*

In such a situation, resort to extraneous aids such as legislative history is unnecessary (*Yardley & Co., Ltd., et al.* v. *United States*, 41 C.C.P.A. (Customs) 85, C.A.D. 533), and is justified only to verify or fortify a position otherwise arrived at, e.g., from a consideration of the statutory language itself, and to demonstrate that there is no ambiguity in the language of the enactment. *Universal Transcontinental Corp.* v. *United States*, 40 C.C.P.A. (Customs) 54, C.A.D. 497, and *United States* v. *J. E. Bernard & Co., Inc.*, 42 C.C.P.A. (Customs) 69, C.A.D. 573. Where the language of a statute or proclamation is plain and unambiguous, consideration of such extraneous aids would be to use them to create a doubt where none otherwise existed. The function of such aids is to solve doubts, not to create them. *United States* v. *Best & Co., Inc., Bonwit Teller & Co.*, 24 C.C.P.A. (Customs) 220, 225, T.D. 48667.

Were the issue one of first impression, we might be inclined to regard as plausible the interpretation of the statutory and proclaimed language contended for by the defendant. The essence of defendant's contention is that if the language of the class designation in the statute, when literally read, included anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, and terpineol, there would have been no reason for Congress to have specifically enumerated them as a series preceding the class designation—that would have been a useless act, unless the naming was for the specific purpose, as contended by the defendant, of setting them apart as distinct tariff commodities from the chemicals intended to be covered by the class designation.*

In that situation, it might be said that the language of the statute and proclamation is ambiguous, i.e., susceptible of two meanings which are opposed to one another, one meaning being that arrived at from a literal reading of the statute and proclamation and the other from a consideration of what must have been the purpose of the form in which the language is presented.

But we are deterred from pursuing the matter further for the reason that it appears that the interpretaion here contended for by the defendant was urged upon our appellate court by the Government during

---

*On the other hand, of course, Congress could have included the series of named chemicals before the class designation merely as exemplars of the type of merchandise it intended to be covered by the class designation.

the course of the appeal in the *Dodge & Olcott, Inc.*, case, *supra*, and in the petition for rehearing filed therein by the appellee and subsequently denied. Consequently, it appears that our appellate court was fully aware of the contention here made and, upon consideration thereof, rejected it.

Following the authority of the decision in the *Dodge & Olcott, Inc.*, case, the protest claim for duty at the rate of 30 per centum ad valorem under paragraph 60, as modified, is sustained, and judgment will issue accordingly.